**2017-2122, -2124, -2239, -2241**

# United States Court of Appeals for the Federal Circuit

ROBERT BOSCH, LLC,

*Appellant,*

– v. –

ANDREI IANCU, Director, U.S. Patent and Trademark Office,

*Intervenor.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2016-00034, IPR2016-00036, IPR2016-00038, IPR2016-00040*

## REPLY BRIEF FOR APPELLANT

KSENIA TAKHISTOVA
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, New York 10166
(212) 309-1000

MARK A. HANNEMANN
THOMAS R. MAKIN
PATRICK R. COLSHER
ERIC S. LUCAS
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000

*Counsel for Appellant*

COUNSEL PRESS, LLC (888) 277-3259

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Robert Bosch LLC v. Iancu

Case No. 17-2122 (lead), -2124, -2239, -2241

## CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☒ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

Robert Bosch LLC

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Robert Bosch LLC | Robert Bosch LLC | Robert Bosch North America Corporation<br>Robert Bosch GmbH |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

Andrews Kurth Kenyon: Eric T. Schreiber

Shearman & Sterling LLP: Enrique W. Iturralde (patent agent)

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary).

None.

November 9, 2018
Date

/s/ Mark A. Hannemann
Signature of counsel

Please Note: All questions must be answered

Mark A. Hannemann
Printed name of counsel

cc: ______________________________

Reset Fields

# TABLE OF CONTENTS

THE '264 PATENT .......... 1

THE '698 PATENT .......... 2

I. The Director and the Board Badly Misread the Prior Art .......... 2

II. The Board Relied Entirely on Hindsight, Had No Substantial Evidence of Motivation to Combine, and Ignored that Arai and Appel Strongly Teach Away From the Claimed Invention .......... 7

III. Bosch Proved Objective Indicia of Non-Obviousness With Uncontested Evidence .......... 10

A. There Is a Presumption of Nexus Because the Aerotwin and Icon Blades Practice the '698 Patent .......... 10

B. Bosch Also Provided Direct and Uncontested Evidence of Nexus .......... 12

C. Bosch Provided Direct and Uncontested Evidence of the Significance of Its Commercial Success .......... 13

IV. Conclusion Regarding the '698 Patent .......... 15

THE '974 PATENT .......... 17

I. The "Background of the Invention" Section of the '974 Patent Says that Bosch Discovered a Problem, Not that the Problem Was Already Known .......... 17

II. The Board Was Wrong to Rely on the Barth Patent as Motivation to Combine .......... 18

III. Bosch Proved Objective Indicia of Non-Obviousness With Uncontested Evidence ........ 21

A. There Is a Presumption of Nexus Because the Aerotwin and Icon Blades Practice the ’974 Patent ........ 21

B. Bosch Also Provided Direct and Uncontested Evidence of Nexus ........ 22

THE ’905 PATENT ........ 24

I. There Is No Substantial Evidence that “Clamps” Are “End Caps” ........ 24

II. Nexus ........ 26

THE POWER OF THE OBJECTIVE EVIDENCE OF NON-OBVIOUSNESS ........ 27

CONCLUSION ........ 33

# TABLE OF AUTHORITIES

**Cases**

*Align Tech., Inc. v. ClearCorrect Operating, LLC*,
2018 WL 4024897 (Fed. Cir. Aug. 22, 2018) ....................................... 25

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
839 F.3d 1034 (Fed. Cir. 2016) ............................................................ 28

*Arctic Cat v. Bombardier Recreational Prods. Inc., BRP U.S. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ....................................................8, 9, 15

*Genzyme Therapeutic Prod. Ltd. v. Biomarin Pharm. Inc.*,
825 F.3d 1360 (Fed. Cir. 2016) ............................................................ 20

*In re Nuvasive, Inc.*,
841 F.3d 966 (Fed. Cir. 2016) .............................................................. 19

*In re Sernaker*,
702 F.2d 989 (Fed. Cir. 1983) ......................................................... 15, 31

*KSR Int'l CO. v. Teleflex Inc.*,
550 U.S. 398 (2007)..................................................................... 8, 15, 20

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
370 F.3d 1354 (Fed. Cir. 2004) ........................................................ 15, 31

*Oil States Energy Servs., LLC v. Greene's Energy Grp.*,
138 S.Ct. 1365 (2018)..................................................................... 12, 22

*Personal Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) .............................................................. 26

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018) ..................................................10, 12, 22

*Tec Air, Inc. v. Denso Mfg. Michigan Inc.*,
192 F.3d 1353 (Fed. Cir. 1999) ........................................................ 14, 31

*United States v. Adams*,
383 U.S. 39 (1966)........................................................................... 7

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) ........................................................*passim*

**Statutes**

35 U.S.C. § 316(e) ............................................................................ 12, 22

## THE ’264 PATENT

Both sides now agree that the final written decision of unpatentability of claim 3 of the ’264 patent should be reversed.[1]

[1] Brief for the Intervenor, Director of the United States Patent and Trademark Office (“Intervenor’s Br.”) at 38 (“The Director agrees with Bosch that reversal is appropriate in Appeal No. 17-2124.”).

## THE ’698 PATENT

### I. The Director and the Board Badly Misread the Prior Art

The Director’s brief several times states that the Appel ’770 patent describes a wiper blade “in which the pressure is greater in the center than in the ends.”[2] This is not correct. As described at length in Bosch’s opening brief, both Appel patents are focused exclusively on achieving uniform force distribution. *E.g.*, the Appel ’770 patent states that the earlier Appel ’551 patent describes a wiper support element “designed such that uniform wiping pressure is exerted along the entire length of an associated wiper blade,”[3] which it refers to as “the desired uniform wiping pressure.”[4]

---

[2] Intervenor’s Br. at 20, 29–30.

[3] Appx8120 [Exhibit 1006 U.S. Patent No. 4,028,770 (IPR2016-00034) (“Appel ’770”) at 1:10–11].

[4] Appx8120 [Appel ’770 at 1:23–24]. The Board’s decision also mentions the concept of “progressive pressure contact from ends to center” in Appel ’770. Appx7696 [Final Written Decision (IPR2016-00034, Paper No. 65) (“’698 Final Written Decision”) at 25]. That does not have anything to do with non-uniform contact pressure when the wiper is in its operating position; instead, it refers to the concept of the curved wiper blade progressively coming into contact with the windshield as it is pressed more and more strongly against the windshield, until ultimately the entire wiper strip is in contact with the windshield: “…as the superstructure 16 is moved normally toward the windshield surface, the opposite ends of the associated blade would make initial contact, with progressive contact being made by the blade with the windshield from the ends thereof toward the center as increasing pressure is applied at the center.” Appx8121 [Appel ’770 at 3:24–30].

The Director's brief suggests that a quotation from Appel '551 indicates non-uniform force distribution: "Appel prefers uniform pressure throughout the wiper, but Appel says that in some embodiments, which he calls a 'practical compromise,' the blade can 'compensate for a limited degree of non-uniform spring load.'"[5] This, too, is a misreading. A more complete quotation of this section of the Appel '551 patent reads:

> As shown in FIG. 5 the backbone 36a and rubber blade 37a have a free form circular arc curvature modified at the ends with somewhat less curvature, **adapted to provide uniform contact pressure** along the length of contact with a flat windshield 43 when fully depressed by the actuating arm (not shown). The reduced curvature at the ends departing from a true circular arc may be required where, as in this embodiment, the parabolic sides terminate at each end with a finite width rather than a point. The theoretically proper curvature at such ends would be intermediate the parabolic curvature shown in FIG. 1 incident to a spring cross section of uniform width and thickness and the circular curvature shown in FIG. 2 incident to parabolic sides meeting at a point at either end; however, as a practical compromise the provision of a circular curvature terminating somewhat short of straight end portions has been found satisfactory due to the ability of the rubber wiper blade to compensate for a limited degree of non-uniform spring load.[6]

What this section is describing is that end sections with somewhat less curvature, which would provide "a limited degree of non-uniform spring load," are

---

[5] Intervenor's Br. at 9.

[6] Appx8116 [U.S. Patent No. 3,192,551 ("Appel '551") at 3:73–4:17 (emphasis added)].

"satisfactory" because the rubber wiper blade has the ability to "compensate" for the non-uniform spring load. That is, the desired "uniform contact pressure" can be achieved even with a "limited degree" of non-uniform spring load, because the rubber wiping element compensates such that the **contact pressure of the rubber on the windshield** is still uniform. Contrary to the Director's argument, this is not a teaching of a wiper blade in which the contact pressure of the wiper on the windshield is less in the ends than in the middle; it is a teaching of a way to achieve "uniform contact pressure" even with a "limited degree of non-uniform spring load."

The Director's brief also badly misreads Arai, stating, "The ends 3A in Arai's backing have slightly less curvature than center section 3B."[7] The portion of Arai to which the Director cites for this proposition (column 3, lines 28–53) states, "The curvature is gradually decreased at longitudinally opposite end portions 3A and 3A,"[8] a statement describing figure 5 (annotated version below), which clearly shows end sections that are more sharply curved than the center section:

---

[7] Intervenor's Br. at 6.

[8] Appx8111 [U.S. Patent No. 4,807,326 ("Arai") at 3:28–53].

FIG. 5




The Director disregards the sentence in Arai that specifically describes the difference between the curve of the blade at the end and the curve in the center: "The curvature is preferably small at opposite end portions and is large at the central portion."[9] This sentence is describing how the **radius of curvature** (the radius of the circular arc that would match the curve of the blade at any given point, shown as arrows in the annotated version of Fig. 5 above) **decreases toward the ends**, that is, how the curvature becomes sharper at the ends—exactly what is shown in Arai's figures, and exactly the opposite of what the '698 patent claims

---

9 Appx8110 [Arai at 1:60–61].

("… a concave curvature in said center section of the carrying element is sharper than in said [end] sections thereof").[10]

And in fact, the Board's final written decision on this point concedes that the obviousness question is whether "a person of ordinary skill would modify Arai so that the combined structure has a concave curvature in the center that is greater [that is, sharper] than in the end sections…."[11]

However, in the final written decision the Board also refers to misstatements by the Board of Patent Appeals and Interferences ("BPAI") in an appeal during the original prosecution.[12] It is these past mistakes that give rise to the out-of-left-field suggestion in the Director's brief that "Arai and Appel arguably could support an anticipation theory of unpatentability."[13] Not even the petitioner ever proposed anticipation by Arai or Appel.

The BPAI's decision in the original prosecution is not argued to be controlling in this IPR. Bosch did not appeal that BPAI decision, which is wrong on its face in view of, *e.g.*, Fig. 5, and instead, after winning part of its appeal of

---

[10] Appx7784 [U.S. Patent No. 6,973,698 ("'698 Patent") at 6:20–22]; *see also* Appx8405 [Exhibit 2003, Declaration of Dr. Steven Dubowsky (IPR2016-00034) ("Dubowsky Decl."), ¶ 53].

[11] Appx7703 ['698 Final Written Decision at 32 (emphasis added)].

[12] Appx7693 ['698 Final Written Decision at 22].

[13] Intervenor's Br. at 30.

the examiner's decision, prosecuted and received allowance of the claim that issued as claim 1 of the '698 patent.

In summary, although both obviousness references are dedicated to the concept of uniform pressure distribution, Arai does show an example in which the contact pressure on the windshield apparently turned out to be less at the ends than the contact pressure in the center, while Appel shows an example in which the wiper is curved more sharply in the center than in the ends.[14]

The obviousness question, then, is whether one of ordinary skill in the art would have found it obvious to select those two particular features from Arai and Appel—two references that teach uniform force distribution—and combine them to make a wiper blade with both the claimed non-uniform less-at-the-ends force distribution and the claimed less-curved-at-the-ends-than-in-the-center shape. "If such a combination is novel, the issue is whether bringing them together **as taught by [the inventor]** was obvious in the light of the prior art." *United States v. Adams*, 383 U.S. 39, 50 (1966) (emphasis added).

## II. The Board Relied Entirely on Hindsight, Had No Substantial Evidence of Motivation to Combine, and Ignored that Arai and Appel Strongly Teach Directly Away From the Claimed Invention

To create the claimed invention from the prior art, the Board cut one property (the pressure distribution) from Fig. 7 of Arai and another property (the

[14] *See, e.g.*, Appx9438, Appx9440 [Petitioner's Reply in Support of Petition (IPR2016-00034, Paper No. 32) at 2, 4].

curve of the blade) from Appel and stitched them together. Substantial evidence pointing toward this precise combination, not merely some general combination of Arai and Appel, is what is required to prove obviousness. *See, e.g., KSR Int'l CO. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("to combine the elements **in the way the claimed new invention does**") (emphasis added); *Arctic Cat v. Bombardier Recreational Prods. Inc., BRP U.S. Inc.*, 876 F.3d 1350, 1359 (Fed. Cir. 2017) ("combine the known elements **in the fashion claimed by the patent at issue**") (emphasis added).

There is no such evidence in this case. The only rationale for this combination in the Board's decision is the "practical compromise" language in Appel '551 (*see* Appx7702 ['698 Final Written Decision at 31], "This practical compromise suggested in the references is a reason to combine them"), which, as discussed above, does not teach uneven wiper-on-windshield pressure distribution. Nor does the Board describe how this "practical compromise" language would encourage one of skill in the art to build a wiper blade with the pressure distribution of Arai Fig. 7, but with the oppositely curved shape of Appel.

Even more important, however, is that the Board did not properly consider that both Arai and Appel strongly and expressly teach away from the claimed invention. "Determining whether a claimed combination would have been obvious to a skilled artisan requires consideration of all the facts…." *Arctic Cat*, 876 F.3d

at 1360. "[I]t is error to fail to consider the entirety of the art," including teachings in the prior art that would tend to discourage one of ordinary skill from making the claimed invention. *See id.*

"Prior art teaches away when a person of ordinary skill, upon reading the reference … would be led in a direction divergent from that taken by the applicant." *Id.* (internal quotations omitted). Here, Arai teaches directly away from the claimed curve shape, instructing, "The [radius of] curvature is preferably small at opposite end portions and is large at the central portion," as shown in Fig. 5.[15] And both Arai and Appel consistently teach directly away from the claimed contact-force distribution; indeed, **the entire concept of Arai and Appel is even force distribution**.[16]

It is only through pure hindsight that one could possibly conclude that an invention specifically directed to a particular non-uniform force distribution is made obvious by two references that so specifically and repeatedly teach uniform force distribution. Arai and Appel represent exactly the kind of "known wiper blade" that presented the problem the '698 patent solved.[17]

---

[15] Appx8110 [Arai at 1:60–61].

[16] Appx8110, Appx8111 [Arai at 1:12–33, 3:34–36]; Appx8118, Appx8122 [Appel '770 at Abstract, 6:13–19], Appx8115 [Appel '551 at 1:28–41].

[17] Appx7782 ['698 Patent at 1:29–45].

## III. Bosch Proved Objective Indicia of Non-Obviousness With Uncontested Evidence

"The objective indicia of nonobviousness play an important role as a guard against the statutorily proscribed hindsight reasoning in the obviousness analysis. Indeed, we have held that such evidence may often be the most probative and cogent evidence in the record." *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1071 (Fed. Cir. 2018) (internal citations and quotations omitted). In this case, however, the Board and the Director rejected Bosch's evidence, even though it was uncontested; there was no contrary evidence in the record. No one disputes that Bosch's beam blades were a landmark industry breakthrough.

### A. There Is a Presumption of Nexus Because the Aerotwin and Icon Blades Practice the '698 Patent

"[T]here is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product is the invention disclosed and claimed in the patent." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016) (internal citations and quotations omitted).

To establish that the Aerotwin and Icon blades practice the '698 patent, Bosch submitted (i) claim charts mapping each claim limitation of the '698 patent

to the Aerotwin and Icon blades,[18] and (ii) interrogatory responses identifying the Aerotwin and Icon blades as practicing the ’698 patent.[19]

Petitioner never contested the substance of Bosch’s claim charts, never argued that the Aerotwin and Icon blades do not actually practice the ’698 patent, and never submitted any contrary evidence.[20] “[A] patent challenger cannot successfully rebut the presumption with argument alone—it must present evidence.” *See WBIP*, 829 F.3d at 1329.

Yet despite the complete lack of evidence to the contrary, the Board found that Bosch had not proven that its commercial products practice the invention claimed in the ’698 patent.[21] The Board appears, in defense of its hindsight

---

[18] Appx8905-8908 [Exhibit 2015, Exhibit 24 to Complaint in In the Matter of Certain Wiper Blades, Inv. No. 337-TA-816 (ITC) (Aerotwin claim charts) (IPR2016-00034)]; Appx8985-8988 [Exhibit 2016 Exhibit 25 to Complaint in In the Matter of Certain Wiper Blades, Inv. No. 337-TA-816 (ITC) (Icon claim charts) (IPR2016-00034)].

[19] Appx8838-8842 [Exhibit 2014 Bosch’s Amended Response to Costco’s First Set of Interrogatories (No. 1), dated June 2, 2015, in Robert Bosch LLC v. Alberee Products, Inc., Case No. 12-574 (LPS) (D. Del.) (IPR2016-00034)].

[20] *See, e.g.*, Appx9449 [Petitioner’s Reply In Support of Petition Pursuant to 37 C.F.R. § 42.23 (IPR2016-00034) at 13].

[21] In particular, the Board criticized the force graph in Bosch’s claim charts, noting that the graph in the claim charts “differs dramatically from the force curve shown and described in the ’698 patent.” Appx7708-7709 [’698 Final Written Decision at 37–38 (citing to, *e.g.*, Figs. 5–7 of the ’698 patent)]. The Board’s analysis was flawed. Instead of comparing the force graph to the claims, the Board improperly compared the force graph to the figures in the specification.

reconstruction of the prior art, to have wrongly applied a standard of proof higher than the applicable preponderance of the evidence standard. *See Oil States Energy Servs., LLC v. Greene's Energy Grp.*, 138 S.Ct. 1365, 1371 (2018) (citing 35 U.S.C. § 316(e)). As this Court stated in *Polaris Industries*:

> Here, the Board declined to accord … substantive weight to the patentee's undisputed evidence that its product is the invention disclosed in certain claims because it characterized the patentee's evidence as "conclusory." On these facts, we conclude that the Board erred in failing to credit Polaris's undisputed evidence that its RZR vehicles embody and are coextensive with claims 34 and 36–38 of the '405 patent.

882 F.3d at 1072 (internal citations and quotations omitted).

### B. Bosch Also Provided Direct and Uncontested Evidence of Nexus

As noted above, because Bosch's products are covered by the '698 patent, there is a legal presumption of nexus between the objective evidence and the '698 patent's sole claim. *Polaris Indus.,* 882 F.3d at 1071–73. But Bosch did not merely rely on the unrebutted presumption of nexus. Bosch's product manager, Mr. Kashnowski, provided affirmative evidence of nexus between the claimed invention and Bosch's commercial success when he testified that part of the reason for Bosch's success was that "[t]he Bosch beam blades were quiet in operation, including when the wiping direction changes and the wiper strip flips from one

side to the other."[22] This performance feature is the focus of the '698 patent, and the real-world result of the contact force and blade curvature properties claimed in the '698 patent.[23] This affirmative evidence of nexus was never challenged. *See WBIP*, 829 F.3d at 1329.

### C. Bosch Provided Direct and Uncontested Evidence of the Significance of Its Commercial Success

As described in more detail in the penultimate section of this reply brief, Bosch provided evidence of overwhelming objective indicia of non-obviousness.[24] For example, Bosch's product manager Mr. Kashnowski specifically testified that Bosch's tens of millions of dollars in sales "were significant in the context of aftermarket wiper blades," that its products won awards from industry groups, that customers were more excited about Bosch's wiper blades than any other automotive product with which he had ever before been involved, that there was a long-felt need for beam blades, and that the industry copied Bosch and licensed the '698 patent.[25] The objective evidence was overwhelming. Bosch's blades changed the aftermarket wiper blade industry.

---

[22] Appx8787 [Exhibit 2007 Declaration of Martin Kashnowski (IPR2016-00034) ("Kashnowski Decl."), ¶ 6].

[23] Appx7782 ['698 Patent ("Summary of the Invention")].

[24] *See supra*, pp. 27–32.

[25] *See* Appellant's Br. at 57–64; *see, e.g.*, Appx8785-8787 [Kashnowski Decl., ¶¶ 3, 5, and 7–11].

It was up to the petitioner to present contrary evidence, if it could. But it couldn't. The Board was never presented with any contrary evidence. The petitioner did not even cross-examine Mr. Kashnowski.

But the Board nonetheless tossed aside Mr. Kashnowski's testimony, even though his testimony was never challenged, and even though there was never any evidence submitted to contradict it. In doing so, the Board improperly found that, despite Mr. Kashnowski's direct testimony to the contrary, Bosch's sales numbers were not probative of commercial success. The Board similarly found that Bosch's awards and customer praise were meaningless, that it didn't matter that there was a long-felt need for beam blades (as evidenced by, among other things, the decades-old prior art that was asserted to prove obviousness), or that, after Bosch's blades hit the market, nearly every player in the industry copied Bosch's patented blade design.[26] *See, e.g.*, *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1361 (Fed. Cir. 1999) ("Although sales figures coupled with market data provide stronger evidence of commercial success, sales figures alone are also evidence of commercial success."); *see also Arctic Cat*, 876 F.3d at 1364–65 (explaining that industry praise and long-felt need tend to show non-obviousness); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1368 (Fed. Cir. 2004) (affirming jury finding of non-obviousness where "[t]he record also show[ed] that

[26] *See* Appx7703-7714 ['698 Final Written Decision at 32–43].

Metabolite has licensed the invention to eight companies"); *In re Sernaker*, 702 F.2d 989, 996 (Fed. Cir. 1983) (extensive licensing supports nonobviousness); *WBIP*, 829 F.3d at 1336 (copying supports nonobviousness). The Board erred, again, in disregarding Bosch's unrebutted evidence.

## IV. Conclusion Regarding the '698 Patent

Even if one were—wrongly—to focus only on the technical evidence, there is no substantial evidence of obviousness in the record of this inter partes review. Indeed, the technical evidence strongly and uniformly teaches directly away from the claimed invention. The Board and the Director simply ignored that Arai teaches away from the claimed curved shape, and that both references teach away from the claimed pressure distribution.

Moreover, one adjudicating an obviousness challenge must consider the evidence as whole, including not only all that the references teach, but also the objective evidence of non-obviousness. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

Here, the Board erred. Perhaps misled by the apparent simplicity of the invention, and by the prior BPAI decisions in the original prosecution history, the Board came to a hindsight-based conclusion of obviousness. Then, to justify that conclusion, the Board (i) concocted a supposed motivation to combine one experimental result from the uniform-force-distribution-advocating Arai reference

with an unrelated blade-curve shape from the uniform-force-distribution-advocating Appel reference, all to arrive at the claimed invention's specific non-uniform force distribution and specific curve shape, and (ii) discarded the completely unrebutted objective evidence of non-obviousness.

On the evidence presented to the Board in the IPR, the Board's decision finding the '698 patent unpatentable is unsupportable and must be reversed.

## THE ’974 PATENT

### I. The “Background of the Invention” Section of the ’974 Patent Says that Bosch Discovered a Problem, Not that the Problem Was Already Known

The Director argues, “The background section of the ’974 specification demonstrates that wind lift was a known problem for beam blades,” and that “The ’974 specification is an admission that wind lift was a known problem for beam blades.”[27] This is an egregious misreading of the ’974 patent.

In the cited section of the ’974 patent, Bosch describes a German Appel patent as “the point of departure” for the invention.[28] The Bosch specification then explains the wind lift problem with the Appel-type blade that Bosch’s inventors discovered.[29] And in the next paragraph, under the heading “Summary of the Invention,” the ’974 patent states, “It is therefore an object of the present invention to provide a wiper blade which avoids the disadvantages of the prior art.”[30]

Nothing in the ’974 patent says that Appel (or anyone else) had discovered the wind-lift problem with beam blades. To the contrary, the patent indicates that the problem is one that Bosch discovered in its development work, and which

---

[27] Intervenor’s Br. at 32; *see also id.* at 1, 12.

[28] Appx96 [Exhibit 1001 U.S. Patent No. 6,292,974 (IPR2016-00038) (“’974 Patent”) at 1:24].

[29] Appx96 [’974 Patent at 1:24–52].

[30] Appx96 [’974 Patent at 1:54–56].

Bosch solved with the invention of the ’974 patent—exactly as the specification of the ’974 patent describes.

## II. The Board Was Wrong to Rely on the Barth Patent as Motivation to Combine

Neither the petition for inter partes review nor the Board’s institution decision ever relied on the Barth patent for anything other than an illustration of the yoke structure of conventional blades, and certainly not for a teaching of the wind-lift problem with beam blades. This argument was constructed by the petitioner in reply, and the Board denied Bosch any opportunity to respond to it.[31]

The Director’s brief states, “Barth underscores that wind lift was a known problem for all blades with a pine-tree cross section, whether beam or conventional blades.”[32] To repeat, Bosch was denied any opportunity to contest this assertion with expert testimony. Had expert testimony been allowed, the evidence might have been, for example, that one of skill in the art would not have thought to blindly apply the conventional-blade teachings of Barth to the world of beam blades.[33] For example, in a conventional blade, there are areas of low contact

---

[31] *See* Appellant’s Br. at 47–49.

[32] Intervenor’s Br. at 32.

[33] *See, e.g.,* Appx10954-10956 [Patent Owner Response (IPR2016-00036) at 8–10]; Appx11127-11130, Appx11143-11146 [Dubowsky Decl. (IPR2016-00036) at ¶¶ 21–25, 58–61, 65–67].

pressure between the points where the yoke is attached to the wiper strip.[34] The wind lift described in Barth might be sufficient to disturb wiping quality in those low-pressure areas between the yoke attachment points in conventional blades, but not in the areas of higher pressure near the yoke attachment points. One of skill in the art would have known that beam blades do not use yokes and therefore do not suffer from these low-pressure areas, and therefore would not have expected the lifting forces described by Barth to affect beam blades in a way significant enough to cause a problem. Again, it was Bosch that first recognized that wind lift was a problem **in beam blades**, which was the problem solved by the ’974 patent.[35]

Barth was the only evidence the Board relied on to provide a motivation to add a spoiler to a beam blade. As Bosch explained in its opening brief, citing *In re Nuvasive, Inc.*, 841 F.3d 966, 969–73 (Fed. Cir. 2016), it was improper for the

---

[34] Thus, of course, the emphasis in Arai and Appel on obtaining uniform pressure distribution. *See also, e.g.*, Appx996 [Exhibit 2006 April 19, 2010 Trial Transcript from Robert Bosch LLC v. Pylon Manufacturing Corporation, Case No. 08-542 (SLR) (D. Del.) (IPR2016-00038) (“Pylon Trial Tr. Vol. 2”) at 666:17–22 (“[T]he conventional wiper blade, the superstructure does not evenly distribute the forces across the blade, but in fact, they are more concentrated at a few locations. Not to imply there is no force between these. But there is much less force.”)].

[35] *See also, e.g.*, Appel ’770, which specifically states that its beam blade wiper “will be seen to have an extremely low profile or silhouette, as compared to prior art [conventional blade] assemblies, thereby minimizing ... the undesirable windlift effect when the vehicle encounters strong head winds or is traveling at a high rate of speed.” Appx8122 [Appel ’770 at 5:64–6:2].

Board to do so, because Barth was not part of any proposed or instituted ground, and Bosch was not given an opportunity to respond to the argument.

The Director's brief barely even acknowledges the due-process problem with the Board's reliance on Barth.[36] The Director does cite the *Genzyme Therapeutic* opinion, 825 F.3d 1360, 1367 (Fed. Cir. 2016), but that opinion itself stands for the proposition that a patent owner must be given "an opportunity to respond" to evidence raised during an IPR—exactly what Bosch did not receive with respect to the Barth motivation-to-combine argument. Tellingly, the Director does not engage with the *Nuvasive* case.

In the IPR of the '974 patent, the exclusive evidence for motivation to combine was the Barth patent, which should be disregarded because Bosch was never given an opportunity to respond to it. And with no substantial evidence of motivation to combine, the Board's final written decision should be reversed. *See, e.g.*, *KSR*, 550 U.S. at 418 (describing the importance of identifying "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does").

---

[36] Intervenor's Br. at 34.

## III. Bosch Proved Objective Indicia of Non-Obviousness With Uncontested Evidence

Like its evidence of objective indicia of non-obviousness with respect to the ’698 patent, Bosch’s evidence of objective indicia related to the ’974 patent was uncontested.

### A. There Is a Presumption of Nexus Because the Aerotwin and Icon Blades Practice the ’974 Patent

The Aerotwin and Icon blades practice the ’974 patent.[37]

As in the case of the ’698 patent, the petitioner never contested the substance of Bosch’s claim charts, never argued that the Aerotwin and Icon blades do not actually practice the ’974 patent, and never submitted any contrary evidence.[38] *See*

---

[37] Appx1134-1138 [Exhibit 2014 Bosch’s Amended Response to Costco’s First Set of Interrogatories (No. 1), dated June 2, 2015, in Robert Bosch LLC v. Alberee Products, Inc., Case No. 12-574 (LPS) (D. Del.) (IPR2016-00038)]; Appx1175-1199 [Exhibit 2015 Exhibit 24 to Complaint in In the Matter of Certain Wiper Blades, Inv. No. 337-TA-816 (ITC) (Aerotwin claim charts) (IPR2016-00038)] (showing the elements of the ’974 patent); Appx1266-1279 [Exhibit 2016 Exhibit 25 to Complaint in In the Matter of Certain Wiper Blades, Inv. No. 337-TA-816 (ITC) (Icon claim charts) (IPR2016-00038)] (same); Appx1083-1085 [Kashnowski Decl. (IPR2016-00038), ¶¶ 6, 11]; Appx691 [Dubowsky Decl., ¶ 29]; Appx831-832, Appx836, Appx846-847, Appx949, Appx950-951 [Exhibit 2005 April 15, 2010 Trial Transcript from Robert Bosch LLC v. Pylon Manufacturing Corporation, Case No. 08-542 (SLR) (D. Del.) (IPR2016-00038) (“Pylon Trial Tr. Vol. 1”) at 234:25–235:4, 239:6–12, 249:25–250:12, 352:9–16, 353:22–354:1]; *see also* Appx1004-1005 [Pylon Trial Tr. Vol. 2 at 698:19–699:21] (discussing related ’905 patent); Appx16075 [2017-02-07 Hearing Transcript at 80:6–12].

[38] *See, e.g.*, Appx1603-1606 [Petitioner’s Reply In Support of Petition Pursuant to 37 C.F.R. § 42.23 (IPR2016-00038) at 12–15].

*WBIP*, 829 F.3d at 1329 ("[A] patent challenger cannot successfully rebut the presumption with argument alone—it must present evidence"—and here, the petitioner did not even argue that the products didn't practice the patents).

Yet despite the complete lack of evidence to the contrary, the Board found that Bosch had not proven that its commercial products practice the invention claimed in the '974 patent.

The Board again appears to have wrongly applied a standard of proof higher than the applicable mere preponderance of the evidence standard. *See Oil States*, 138 S.Ct. at 1371 (citing 35 U.S.C. § 316(e)).

### B. Bosch Also Provided Direct and Uncontested Evidence of Nexus

As noted above, because Bosch's products are covered by the '974 patent, there is a legal presumption of nexus between the objective evidence and the '974 patent's claims. *Polaris Indus.*, 882 F.3d at 1071–73. But Bosch did not merely rely on the unrebutted presumption of nexus. Bosch's product manager Mr. Kashnowski provided affirmative evidence of nexus between the claimed invention and Bosch's commercial success when he testified that part of the reason for Bosch's success was that the Aerotwin blade and Icon blade "included a flexible spoiler"[39]—a key element of the '974 patent. Mr. Kashnowski further testified that

[39] Appx1083 [Kashnowski Decl., ¶ 6]; Appx950-952 [Pylon Trial Tr. Vol. 1 at 353:22–355:15].

the "Pace award particularly mentioned the use of a flexible spoiler on the Aerotwin blade."[40]

This affirmative evidence of nexus was never challenged. *See WBIP*, 829 F.3d at 1329.

Because Bosch proved, by presumption and by direct evidence, a nexus between the invention of the '974 patent and the objective indicia of non-obviousness (the strength of which is discussed in the penultimate section of this reply brief), the final written decision should be reversed or be vacated and remanded to the Board to consider the objective evidence in its obviousness analysis.

[40] Appx1081-1082 [Kashnowski Decl., ¶ 3]; Appx836 [Pylon Trial Tr. Vol. 1 at 239:6–16].

## THE ’905 PATENT

### I. There Is No Substantial Evidence that “Clamps” Are “End Caps”

The Director’s brief states that “[t]here can be no serious dispute that Hoyler teaches the end caps” claimed in the ’905 patent.[41] This is as wrong as it is cavalier. The words “end caps” do not appear in Hoyler. Bosch’s technical expert opined that “clamps,” which do appear in Hoyler, “are not caps.”[42] And the Board did not rely on the conclusory, implicitly contrary testimony of the petitioner’s expert.[43] So, in fact, there was no evidence at all that, to one of ordinary skill in the art, Hoyler describes the claimed “end caps.”

The Director discards Bosch’s expert’s explanation that a function of end caps is to protect people and cars from being scratched.[44] That logical explanation not only went unrefuted, it was in fact **confirmed** by the petitioner’s technical expert during his deposition:

> [O]ften end caps also cover -- completely cover the end of the wiper blade to prevent possible scratching or things like that, from the metal.[45]

---

41 Intervenor’s Br. at 35.

42 Appx11147 [Dubowsky Decl. (IPR2016-00036), ¶ 69].

43 Appellant’s Br. at 55–56.

44 Intervenor’s Br. at 34–35; Appx11147 [Dubowsky Decl., ¶ 69].

45 Appx11094-11095 [2016-07-07 Deposition of Dr. Gregory W. Davis at 118:19–119:18].

The Board disregarded Bosch's expert testimony and, on its own, reasoned that one of skill in the art would find Hoyler's clamps to be "end caps" because each clamp "covers the end and sides of the blade. Thus, it caps the end."[46] Not only is that an improper fact-finding by the Board based on its own view of its own technical expertise, with no substantial evidence to support the finding; it is simply not true, as can be seen in the side and top views of Figure 1 of Hoyler reproduced in Bosch's opening brief.[47]

Because the Board's finding that to a hypothetical person of skill in the art, Hoyler's "clamps" are "end caps" was a necessary premise of its obviousness determination—the Board did not find the "end cap" claim limitation taught in any source outside Hoyler, and it was never argued that Hoyler's clamp rendered "end caps" obvious—the Board's obviousness determination itself should be reversed. *See Align Tech., Inc. v. ClearCorrect Operating, LLC,* Appeal No. 2017-2106, 2018 WL 4024897, at *5 (Fed. Cir. Aug. 22, 2018) (vacating final written decision of obviousness because the Board's finding that a reference taught a claim

---

Even the defendant's lead counsel in the 2010 district court case recognized the safety function of end caps. *See* Appx11225 [Pylon Trial Tr. Vol. 1 at 188:1–3 ("This is an end cap. It is exactly what it sounds like. It goes on the end beam and it serves a safety function because the end of this metal can be sharp.")].

[46] Appx10140 [Final Written Decision (IPR2016-00036) ("'905 Final Written Decision") at 20].

[47] Appellant's Br. at 53–55.

limitation was not supported by substantial evidence); *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993 (Fed. Cir. 2017) (vacating final written decision of obviousness where the Board failed to adequately explain and support its conclusion that the prior art disclosed all of the elements in the challenged claims).

## II. Nexus

Unlike with respect to the ’698 and ’974 patents, the Board did find a nexus between Bosch’s objective evidence and the merits of the claimed invention of the ’905 patent.[48] The power of that objective evidence is discussed below.

[48] Appx10152 [’905 Final Written Decision at 32].

## THE POWER OF THE OBJECTIVE EVIDENCE OF NON-OBVIOUSNESS

In its final written decision, the Board acknowledged that Bosch had proven a nexus between the ’905 patent and the objective evidence of non-obviousness, and, as described above, Bosch in fact also proved nexus with respect to the ’698 and ’974 patents.

However, the Board found the objective indicia to have little if any weight.[49] This finding is wrong, and it appears to be a conclusion reached merely to support the Board’s hindsight-based obviousness decisions. Bosch’s beam-blade inventions were so successful that they changed the industry—“Bosch created an entirely new and tremendously successful market category”[50]—and there is no substantial evidence to the contrary.

With respect to **industry praise**, it is undisputed that the Icon and Aerotwin blades won awards and were praised by customers, who had an unprecedented “tremendous reaction” to the Bosch products.[51] But, the Board criticized Bosch for not providing copies of the awards, ignored Bosch’s descriptions of how highly

---

49 Appx10152 [’905 Final Written Decision at 32].

50 Appx11524 [Kashnowski Decl., ¶ 9].

51 Appx11521-11524 [Kashnowski Decl., ¶¶ 3, 8]; Appx11274-11275, Appx11276, Appx11296 [Pylon Trial Tr. Vol. 1 at 237:8–238:6, 239:6–16, 252:3–16, 259:11–18].

esteemed the awards were,[52] and found that the praise Bosch received "has minimal probative weight."[53] The Board erred by not affording Bosch's industry praise due weight. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1053 (Fed. Cir. 2016) ("[I]f there is evidence of industry praise of the claimed invention in the record, it weighs in favor of the non-obviousness of the claimed invention.").

With respect to **long felt need**, it is undisputed that "there were no commercially viable beam blades prior to 2002."[54] And of course, it is undisputed that there are prior-art paper patents (*e.g.*, Appel '551), going back decades, in which those inventors attempted to solve the problems associated with conventional blades. Bosch also presented direct testimony from a Bosch employee who had been working with wiping systems since 1993, about the drawbacks of conventional blades, and that "All of these problems with conventional wiper blades were well known in the industry, but solutions to those problems were

---

[52] Appx11274, Appx11296 [Pylon Trial Tr. Vol. 1 at 237:8–24 ("The Pace award is given out by automotive news magazine, which they have a number of prominent industry -- industry members, both from vehicle manufacturers as well as system and part manufacturers."), 259:11–18 ("Q. Has the ICON blade ... won any industry awards? A. Yes, the ICON blade in 2008, three years after we brought it out, won an industry award from Frost & Sullivan, one of the more prominent automotive research organizations. It is well respected in the industry.")]; Appx11522-11524 [Kashnowski Decl., ¶¶ 3, 8].

[53] Appx10149-10150 ['905 Final Written Decision at 29–30].

[54] Appx11521-11522 [Kashnowski Decl., ¶ 3].

not."[55] During an earlier trial, he was asked directly whether "there was a need in the industry that was recognized to improve on the bracketed blades," to which he replied, "Well, there definitely was."[56]

The Board, however, found that any long felt need was resolved because "the prior art already included wipers with spoilers (e.g., Prohaska) and end caps (e.g., Hoyler)."[57] This finding—that the individual limitations of the claim at issue are found in the various references being applied—would **always be true** when there is alleged to be obviousness, and, so the Board's reasoning would eliminate long felt need as an objective indicia of obviousness and useful check on hindsight. The Board failed to analyze the crux of Bosch's long-felt-need argument—that Bosch met the long felt need for commercially viable beam blades with its Icon and Aerotwin blades. *See Apple*, 839 F.3d at 1056 ("Evidence of a long-felt but unresolved need can weigh in favor of the non-obviousness of an invention because it is reasonable to infer that the need would not have persisted had the solution been obvious.").

---

[55] Appx11521 [Kashnowski Decl., ¶ 2].

[56] Appx11308 [Pylon Trial Tr. Vol. 1 at 271:4–22]; *see also* Appx11284 [*id.* at 247:8–20 ("The customers wanted to -- to get this product from us and offer it as soon as possible for sale to the aftermarket.")].

[57] Appx10150 ['905 Final Written Decision at 30].

With respect to **copying**, Bosch submitted uncontested evidence that other market participants copied its Icon blade, and that Bosch successfully asserted its patent rights in the ’905 patent against infringers.[58] The Board erred by affording Bosch’s evidence of copying no weight. *See WBIP*, 829 F.3d at 1336 (“Copying may indeed be another form of flattering praise for inventive features, … and thus evidence of copying tends to show nonobviousness.”) (internal citations and quotations omitted).

With respect to **commercial success**, Bosch’s witness testified that Bosch’s beam blades were “Absolutely” successful commercially, and that he could not “think of a product line that’s ever come into the wiper blade market … that has had the type of success and provided the type of growth or delivered the type of value to consumers that this product style has done.”[59] He testified that “the demand for th[ese] products, even though it was priced significantly higher than any blade had been in the aftermarket, was considerably high, more than we would have forecast. I think we made a comment, if we would have put these forecast numbers in, we probably would have lost our jobs.”[60] He also testified that Bosch’s

---

[58] Appx11524-11525 [Kashnowski Decl., ¶¶ 9–11]; Appx11294-11295 [Pylon Trial Tr. Vol. 1 at 257:23–258:11]; Appx11485 [Pylon Trial Tr. Vol. 2 at 860:18–861:12].

[59] Appx11307 [Pylon Trial Tr. Vol. 1 at 270:14–22].

[60] Appx11286 [Pylon Trial Tr. Vol. 1 at 249:9–24].

revenues were approximately $70 million in three years, and that this was commercially significant.[61] The Board, however, found that evidence to have little or no probative value of commercial success because "the numbers by themselves are ... not credible evidence of commercial success."[62] The Board erred by not crediting Bosch's sales figures and other uncontested testimony of commercial significance. *See, e.g.*, *Tec Air*, 192 F.3d at 1361 ("Although sales figures coupled with market data provide stronger evidence of commercial success, sales figures alone are also evidence of commercial success.").

And with respect to **industry respect**, it is uncontested that "all of Bosch's major competitors" have licensed Bosch's beam-blade patents, and that Bosch has been paid royalties for these licenses.[63] *See Metabolite Labs.*, 370 F.3d at 1368 (affirming jury finding of non-obviousness where "[t]he record also show[ed] that Metabolite has licensed the invention to eight companies"); *see also In re Sernaker*, 702 F.2d at 996 (extensive licensing supports nonobviousness).

All of this is strong objective evidence of non-obviousness. There was a long-felt need, which Bosch met. There was industry praise for Bosch's products. Those products were tremendously successful commercially, so successful that

---

[61] *See, e.g.*, Appx11523-11524 [Kashnowski Decl., ¶ 8]; Appx11294 [Pylon Trial Tr. Vol. 1 at 257:16–22].

[62] Appx10152 ['905 Final Written Decision at 32].

[63] Appx11524-11525 [Kashnowski Decl., ¶ 11].

they were copied by competitors. And Bosch's major competitors have all licensed Bosch's beam-blade patents. All of this uncontested evidence should have been taken by the Board to rebut its hindsight-based conclusion of obviousness, and the Board's failure to properly consider this evidence should result in reversal or remand of all three IPRs.

## CONCLUSION

In IPR No. 2016-00040, concerning the ’264 patent, both sides now agree that the final written decision of unpatentability of claim 3 should be reversed.

In IPR No. 2016-00034, concerning the ’698 patent, there is no substantial evidence of obviousness and the final written decision should be reversed; the Arai and Appel prior art teaches away from the claimed invention, not toward it. In the alternative, the decision should either be reversed or be vacated and remanded to the Board for consideration of the objective indicia of non-obviousness, because Bosch proved a nexus between the claimed invention and those indicia by a preponderance of the evidence.

In IPR No. 2016-00038, concerning the ’974 patent, there is no substantial evidence of obviousness and the final written decision should be reversed; the only evidence of motivation to combine is in the Barth patent, which Bosch was never given an opportunity to challenge during the IPR. In the alternative, the decision should either be reversed or be vacated and remanded to the Board for consideration of the objective indicia of non-obviousness, because Bosch proved a nexus between the claimed invention and those indicia by a preponderance of the evidence.

In IPR No. 2016-00036, concerning the ’905 patent, there is no substantial evidence of obviousness and the final written decision should be reversed; there is

no substantial evidence that the Hoyler patent teaches “end caps” to one of skill in the art. In the alternative, the decision should either be reversed or be vacated and remanded to the Board for reconsideration of the objective indicia of non-obviousness, because the Board erred by giving too little credence to Bosch’s evidence of objective indicia of non-obviousness.

Dated: November 9, 2018

Respectfully submitted,

*/s/ Mark A. Hannemann*

Mark A. Hannemann
Thomas R. Makin
Patrick R. Colsher
Eric S. Lucas
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Tel: (212) 848-4000
Fax: (646) 848-7696

Ksenia Takhistova
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 309-1000
Fax: (212) 309-1100

*Attorneys for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a) or Federal Rule of Federal Circuit Rule 28.1.

☒ This brief contains *[state the number of]* 6,947 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), or

☐ This brief uses a monospaced typeface and contains *[state the number of]* ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒ This brief has been prepared in a proportionally spaced typeface using

*[state name and version of word processing program]* Microsoft Word 2010 in

*[state font size and name of type style]* 14 point font; Times New Roman, or

☐ This brief has been prepared in a monospaced typeface using

*[state name and version of word processing program]* ______ with

*[state number of characters per inch and name of type style]* ______ .

/s/ Mark A. Hannemann

(Signature of Attorney)

Mark A. Hannemann

(Name of Attorney)

Appellant

(State whether representing appellant, appellee, etc.)

Nov 9, 2018

(Date)

Reset Fields

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on November 9, 2018 by:

- ☐ U.S. Mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means (by E-mail or CM/ECF)

| Mark A. Hannemann | /s/ Mark A. Hannemann |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Shearman & Sterling LLP |
| Address | 599 Lexington Avenue |
| City, State, Zip | New York, NY 10022 |
| Telephone Number | (212) 848-7696 |
| Fax Number | (646) 848-7696 |
| E-Mail Address | mark.hannemann@shearman.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields